# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CIVIL ACTION NO. _____

| | | |
|---|---|---|
| **JANE DOE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **COMPLAINT** |
| **CHARLOTTE-MECKLENBURG** | ) | **DEMAND FOR JURY TRIAL** |
| **BOARD OF EDUCATION;** | ) | |
| **BRADLEY LEAK**, individually and as an agent | ) | |
| of Charlotte-Mecklenburg Schools; | ) | |
| **ANTHONY PERKINS**, individually and | ) | |
| as an agent of Charlotte-Mecklenburg Schools; | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Jane Doe ("Ms. Doe"), by and through her undersigned counsel, brings this action against Defendant Charlotte-Mecklenburg Schools Board of Education ("CMS"), Defendant Bradley Leak, and Defendant Anthony Perkins (collectively "Defendants") for deliberate indifference and negligence in failing to prevent, investigate, or otherwise address the rape of Ms. Doe while attending Myers Park High School (MPHS). On November 3, 2015, School Safety Resource Officer ("SSRO"), Defendant Leak, witnessed and then failed to intervene when an 18-year-old student, Q.W., forcibly abducted a minor student, Ms. Doe, from campus. Ms. Doe frantically sent text messages to her classmates and mother stating she had been "kidnapped," needed "help," was "scared," and pled for someone to "call the cops" and "go to officer lee" [sic]. A panicked classmate immediately reported these messages to Defendant Leak, but he again refused to act and protect Ms. Doe. Even when Ms. Doe's father called MPHS, Defendant Leak refused to act by claiming, without any basis, that Ms. Doe – a student in good standing without

1

any disciplinary history whatsoever – was merely skipping school. Left in the woods without any help, Q.W. brutally raped Ms. Doe as she desperately pleaded for him to stop. Despite notice of the rape, Defendants subsequently accused Q.W. and Ms. Doe of truancy to obstruct any campus or criminal investigation into the rape to continue responding with deliberate indifference. This lawsuit seeks to obtain justice for Ms. Doe based upon the Defendants' multiple violations of her rights under applicable federal and state law.

## JURSIDICTION & VENUE

1.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343 because Plaintiff's claims assert federal questions regarding her civil rights under Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §§ 1681, *et seq.*, and under 42 U.S.C. §1983.

2.      This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because the state law claims are so related to the federal law claims in this action to form part of the same case and controversy.

3.      This Court has personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4(k)(1) because Defendants, upon information and belief, are located and regularly conduct business in this jurisdiction and because the conduct giving rise to this cause of action occurred in this judicial district.

4.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because Defendants, upon information and belief, reside within the judicial district and a substantial number of the events and omissions which form the basis of this complaint occurred within this district.

2

## PARTIES

5.      Plaintiff, Jane Doe, is a 20-year-old college student whose permanent residence is in Charlotte, North Carolina. *See* Exhibit A to this Motion for Leave to Proceed Under Pseudonym and Memorandum in Support Thereof. At all times relevant to this Complaint, Ms. Doe was a minor student in her junior year at MPHS in Charlotte, North Carolina. Plaintiff has filed a Motion for Leave to Proceed Under Pseudonym and Memorandum in Support Thereof in this matter for the sole purpose of protecting her identity and dignity in this highly personal and sensitive matter as the victim of rape and a minor student at all relevant times.

6.      Defendant Charlotte-Mecklenburg Schools Board of Education ("CMS") is a corporate body located in Charlotte, North Carolina, with powers granted by the State of North Carolina to "general[ly] control and supervis[e] . . . all matters pertaining to the public schools in their respective administrative units and . . . [to] enforce the school law in their respective units." N.C. Gen. Stat. §§ 115C-36, 115C-40. MPHS is a public educational institution under the control and supervision of CMS and a recipient of federal funding from the U.S. Department of Education to subject it to Title IX of the Education Amendments Act of 1972 ("Title IX"), 20 U.S.C. §§ 1681, *et seq.*

7.      Defendant Bradley Leak is, upon information and belief, a resident of Mecklenburg County, North Carolina. Defendant Leak is sued in his individual capacity and in his official capacity as a SSRO at MPHS. *See* N.C. Gen. Stat. § 115C-61; *see also* N.C. Gen. Stat. § 160A-288.4(d); N.C. Gen. Stat. § 16. At all times relevant to this Complaint, Defendant Leak served as an SSRO and thus acted as an agent of CMS.

8.      Defendant Anthony Perkins is, upon information and belief, a resident of Pasquotank County, North Carolina. Defendant Perkins is sued in his individual capacity and in

his official capacity as the Assistant Principal of MPHS. At all times relevant to this Complaint, Defendant Perkins served as Assistant Principal and thus was an employee of CMS.

## FACTS

9.      During the fall of 2015, Ms. Doe was enrolled and attended MPHS as a minor student in her junior year.

10.     On November 3, 2015, around 6:30 am, Ms. Doe and several friends were in the Language Arts ("LA") building at MPHS waiting for classes to begin when Q.W. sent her text messages asking her to skip class with him that day. Ms. Doe declined and informed her classmates of the same.

11.     Q.W. then offered to walk Ms. Doe from the LA building to her first period weightlifting class at the gym across campus, which started at 7:15 a.m. Ms. Doe accepted.

12.     Q.W. met Ms. Doe at the LA building and the two began walking to the gym around 7:00 a.m. As they walked, Q.W. continued to pressure Ms. Doe to skip class with him. Ms. Doe clearly and repeatedly declined.

13.     As the two walked near the parking area, Defendant Leak was on duty as the SSRO for MPHS. He saw them and called out to Ms. Doe asking where she was going. During school hours and while on school premises, Q.W. then immediately grabbed and squeezed Ms. Doe's arm and pulled her toward the woods adjacent to campus.

14.     Ms. Doe did not want to skip class and get in trouble. She also feared for her safety and verbally protested Q.W.'s actions during the abduction, but he pulled her further into the woods.

15.     Upon information and belief, Defendants knew that the wooded area immediately adjacent to MPHS is a dangerous location for students where sexual assaults have occurred. *See*

4

*e.g.* "Sexual Assault Reported Near Myers Park High School," WBTV (May 4, 2016), *available at* http://www.charlotteobserver.com/news/local/article75658457.html.

16.     The 2015-2016 Student Handbook prohibits MPHS students from "leaving campus without permission from an administrator."

17.     The State of North Carolina has created a legal duty for Defendant CMS to "provide a safe school environment." N.C. Gen. Stat. §115C-47(61). To fulfill this duty, the State authorizes Defendant CMS to enter into an agreement with local law enforcement "to provide security at the schools by assigning volunteer school safety resource officer." *Id.*

18.     Defendant Leak acted under color of law and as an agent of CMS while the SSRO at MPHS. While serving as SSRO, he was deliberately indifferent and negligent when he acted in bad faith by refusing to take any action to assist or otherwise rescue Ms. Doe after witnessing her forcible abduction from MPHS's campus. Defendant Leak had the legal authority, duty, and obligation to take action and protect Ms. Doe.

19.     During the abduction, Ms. Doe sent text messages to her classmates conveying the abduction and her fear of Q.W.:

> "Help me;"
>
> "Call the cops;"
>
> "Somebody go to officer lee" [sic];
>
> "I'm so scared;"
>
> "Seriously go to officer lee" [sic];
>
> "Quit calling me; He's watching me;"
>
> "Please I'm being serious;"
>
> "IDK WHERE WE ARE;" and

"Guys I'm being serious; I'm really scared; Nobody is helping."

In response to these messages, one of her classmates worried: "What if she's getting rape; Cause he's like following her around." Ms. Doe's classmates knew Q.W. had been aggressive in sexually pursuing Ms. Doe previously, and as recently as that morning.

20.     Ms. Doe's friend, J.D., immediately sought out Defendant Leak and reported the abduction. Defendant Leak refused to take any action to prevent harm to Ms. Doe. J.D.'s pleas to Defendant Leak, and his refusal to take immediate action, are documented in an audio recording.

21.     J.D. sent a text message to Ms. Doe indicating that Defendant Leak refused to help.

30.     Ms. Doe had also sent text message to her mother pleading for help:

> "Mom I'm being kidnapped; Call somebody. Dont call me" [sic];
>
> "Officer Lee saw me; Mom Fr don't call me I'm scared; Mom don't call me" [sic];
>
> "Yes mom I'm being serious; I'm so serious;"
>
> "Mom call the police;"
>
> "All I know is. I'm scared asf. I told him I didn't want to do this" [sic]; and
>
> "I think he's crazy."

Ms. Doe also attempted to provide her mother information about her location to aid in her rescue.

31.     Ms. Doe's mother asked her husband to contact MPHS in order to locate and protect their daughter. Defendant Leak took the call and confirmed that he had observed Q.W. and Ms. Doe leave campus. Defendant Leak then falsely stated without any basis that Ms. Doe was skipping class voluntarily, despite her being a student in good standing without any disciplinary or truancy history whatsoever. This discouraged Ms. Doe's father from taking any further at that time action to rescue or locate his daughter.

24.     During this time, Q.W. raped Ms. Doe.  Specifically, Q.W. ignored Ms. Doe's protests and forcibly kissed her.  When Ms. Doe pulled away, saying "I don't want to do this," Q.W. unzipped his pants, pulled out his genitals, and repeatedly demanded that Ms. Doe "kiss it like you kissed me." Ms. Doe kept saying "no." Q.W. then pushed her to her knees and forced her head near his genitals.  She begged him to stop and looked toward the path to see if anyone was coming to rescue her given her numerous requests for help via text message.  Q.W. then forced his penis into Ms. Doe's mouth and proceeded to pull her hair to force her head back and forth. Ms. Doe repeatedly struggled to turn her head away and stop the rape.

25.     At one point during the sexual attack, a group of students came upon Q.W. and Ms. Doe in the woods.  Q.W. stopped the rape until the students walked past, and Ms. Doe began crying when he continued again.  Q.W. then ejaculated.  To intentionally preserve evidence of the rape, Ms. Doe spit out his semen onto her shirt.  This caused Q.W. to panic and attempted to rub off the semen.

26.     Around 7:50 am, Ms. Doe informed her mother via text message of the sexual assault: "I was attacked." Her parents again contacted Defendant CMS to demand that officials locate and help their daughter.

27.     Defendants Leak and Perkins then went to look for Ms. Doe in a patrol vehicle. They located Q.W. and Ms. Doe outside the woods.

28.     Ms. Doe was in distress and appeared disheveled.  Her hair was in disarray, she had mud on her clothing, her glasses were broken, and there was semen on her shirt.  Despite her obvious distress, Defendant Leak directed Ms. Doe to sit next to Q.W. in the patrol vehicle, which she refused to do.  Defendant Leak then put her in the front seat by him to interrogate her while

7

Q.W. remained in the back of the vehicle. Ms. Doe was in shock, and terrified of Q.W., who was seated directly behind her, so she was unable to report the rape at that time.

29. Once back on campus, Defendant Perkins removed Q.W. from the patrol vehicle. Defendant Leak then asked, and Ms. Doe confirmed, that Q.W. had sexually assaulted her.

30. Despite actual notice of the rape, none of the Defendants took a statement from Ms. Doe to investigate or resolve the complaint, as required under Title IX. Instead, Defendants merely accepted Q.W.'s version of events without any investigation. Furthermore, none of the Defendants offered to transport Ms. Doe to a hospital or otherwise assist her in reporting the rape to local law enforcement.

31. Defendant Perkins, under color of law and as an employee of CMS acting within his official capacity as Assistant Principal, failed and refused to take action under Title IX to investigate or resolve Ms. Doe's complaint of sexual assault. Defendant Perkins had the legal authority, duty, and obligation to address this complaint.

32. Upon information and belief, Defendant CMS only investigated and disciplined Q.W. for truancy.

33. When Ms. Doe's father arrived at MPHS, he immediately observed his daughter's trauma, disheveled appearance, and the lack of any compassion towards her.

34. Ms. Doe's father overheard Defendant Leak warn Ms. Doe that if she was not telling the truth about the sexual assault she could be charged with a crime.

35. Ms. Doe's father promptly took her to Carolinas Health Care System for emergency medical attention and a rape kit to preserve forensic evidence of the rape.

8

36.    Both Ms. Doe's parents and the emergency room nurses repeatedly called Charlotte-Mecklenburg Police Department ("CMPD") without any officer responding to take Ms. Doe's statement or collect the rape kit.  In total, there were eight calls made to 911.

37.    Upon information and belief, CMPD did not respond because Defendant Leak had filed a report stating that Ms. Doe skipped class (with no indication of the reported rape).  As a result, CMPD never responded to the emergency room to collect the rape kit or take Ms. Doe's criminal complaint.

38.    While protecting their daughter's anonymity, Ms. Doe's parents contacted the local media regarding CMPD's failure to investigate the rape and Defendants' role in obstructing Ms. Doe's criminal complaint.  *See* Nick Ochsner, "Parents Question CMPD Handling of Daughter's Reported Sexual Assault," WBTV (Nov. 23, 2015), *available at* http://www.wbtv.com/story/30583871/parents-question-cmpd-handling-of-daughters-reported-sexual-assault/.

39.    After the local media report, on November 18, 2015 (15 days after Ms. Doe reported being raped) (15 days after the rape), CMPD created the first record of Ms. Doe's reported rape.

40.    Ms. Doe's family reported the circumstances of the rape and the actions and inactions of Defendants to the U.S. Department of Education's Office for Civil Rights ("OCR").  Following an federally  investigation, on December 5, 2017, OCR released its finding (Case No. 11-16-1348) that Defendant CMS was not in compliance with Title IX during the time of the reported rape.

41.    OCR specifically found (through admission by Defendant CMS) that "it did not have a designated Title IX Coordinator or anyone specifically designated or responsible for

investigation or responding to complaints/reports alleging discrimination on the basis of sex, including sexual harassment and sexual assault/violence" at the times relevant to this Complaint.

42.     This is at least the second time OCR has found Defendant CMS out of compliance with Title IX regarding complaints of sexual harassment and/or violence against its students.

43.     Ms. Doe sought psychological care for her extreme emotional distress and related harms, took a temporary leave of absence from MPHS, then permanently transferred out of MPHS and missed her senior year of high school with her classmates and friends.

## CLAIMS FOR RELIEF

### COUNT I
### *(Deliberate Indifference in Violation of Title IX, 20 U.S.C. §§ 1681, et al.,*
### against Defendant CMS)

44.     Plaintiff incorporates by reference the allegations of facts contained in the previous paragraphs, as if fully set forth herein.

45.     At all relevant times to this complaint, Ms. Doe was a minor student enrolled at MPHS seeking access to education opportunities and benefits provided by Defendant CMS.

46.     Defendant CMS is the corporate entity designated by the State of North Carolina to control and supervise MPHS, which is a public secondary school meeting the definition of an "educational institution" under Title IX, 20 U.S.C. § 1681(c). Defendant CMS and/or MPHS receives federal funding from the U.S. Department of Education and thus is subject to the requirements of Title IX, 20 U.S.C. §§ 1681, *et seq*.

47.     The abduction and rape of Ms. Doe by Q.W. constitutes sexual harassment, which is discrimination on the basis of sex prohibited under Title IX, 20 U.S.C. § 1681(a).

48.     Defendant CMS exercised substantial control over Q.W., a student at MPHS, and had substantial control over the context of the sexual harassment, as its own agent, Defendant

Leak, observed the forcible abduction and he received ongoing notice about Ms. Doe's abduction and need for immediate intervention.

49.     The abduction and rape of Ms. Doe is sexual harassment sufficiently severe to create a hostile educational environment at CMS and thus impact her access to education.  Ms. Doe took a temporary leave of absence after the rape then permanently transferred out of MPHS to miss her senior year of high school with her classmates and friends.

50.     Defendant CMS had actual knowledge that Q.W. abducted Ms. Doe through its agent, Defendant Leak.  Defendant CMS also had actual knowledge that Q.W. raped Ms. Doe as part of this abduction through its agent, Defendant Leak, and through its employee, Defendant Perkins.

51.     At all relevant times, Defendant Leak was an agent of CMS acting within the scope of his duties and authority at CMS.  Pursuant to N.C. Gen. Stat. §115C-47(61), SSROs "provide security" to ensure a "safe school environment."  Defendant Leak is therefore an appropriate official able to address sex discrimination and to institute corrective action on behalf of CMS, pursuant to Title IX.

52.     At all relevant times, Defendant Perkins was an employee of CMS acting within the scope of his employment and authority at CMS.  Furthermore, Defendant Perkins was an appropriate official able to address sex discrimination and to institute corrective action on behalf of CMS, pursuant to Title IX.

53.     By and through its agents and officials, Defendant CMS was deliberately indifferent and negligent when it and its officials refused to respond and prevent Q.W.'s abduction and subsequent rape of Ms. Doe.  This deliberate indifference and negligence left Ms. Doe subject

to an abduction and rape that impeded her ongoing access to educational opportunities and benefits at MPHS, and CMS more generally.

54.     Defendant CMS's failure to act upon Q.W.'s abduction of Ms. Doe constitutes deliberate indifference.  Defendant Leak had three opportunities to intervene and rescue Ms. Doe from the unwelcome sexual harassment and physical abduction by Q.W., yet he repeatedly failed to take any action as an agent of CMS.  As a direct result, Ms. Doe was raped.

55.     Defendant CMS's response to Q.W.'s rape of Ms. Doe was clearly unreasonable in light of the known circumstances to constitute deliberate indifference.  Defendants Leak and Perkins observed Ms. Doe's disheveled appearance, which included semen on her shirt to evidence the sexual harassment, and Defendant Leak learned of the rape from Ms. Doe.  Despite this, CMS, by and through its officials, failed to take her complaint to investigate or resolve the sexual violence as required under Title IX.  Furthermore, Defendant Leak discouraged her from taking action by suggesting she could be arrested for a false report.  He then filed a false report with CMPD claiming Ms. Doe skipped school without any mention of the rape, which obstructed her criminal complaint.  As a result, Q.W. suffered no disciplinary or criminal action for the reported rape of Ms. Doe.

56.     Defendant CMS, by and through its agents and officials, perpetuated a hostile educational environment for Ms. Doe at MPHS without remedy, as required under Title IX.  Furthermore, Defendant CMS accused Ms. Doe of truancy to threaten disciplinary action instead of investigating the reported rape.

57.     As a direct and proximate result of Defendant CMS's deliberate indifference, by and through its agents, Ms. Doe sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

12

a. Past, present, and future physical and psychological pain, suffering, and impairment;

b. Medical bills, counseling, and other costs and expenses for past, present, and future medical and psychological care;

c. Loss of educational access and opportunity;

d. Past, present, and future economic losses, including lost wages;

e. Attorneys' fees and costs; and

f. Such other and further relief that this Court deems just and proper.

## COUNT II
### (*Violation of Property & Liberty Interest under Fourteenth Amendment, 42 U.S.C. § 1983, against Defendant Leak*)

58.     Plaintiff incorporates by reference the allegations of facts contained in the previous paragraphs, as if fully set forth herein.

59.     Defendant Leak is a local law enforcement employee who was contracted to work as an agent of CMS, specifically a SSRO. At all times relevant to this complaint, Defendant Leak worked at MPHS and acted under color of law within the scope of his agency as a SSRO.

60.     The State of North Carolina has created a property interest in students having "equal opportunities . . . for all students" to access "free public schools." N.C. Const., Art. IX; N.C. Gen. Stat. § 115C-1.

61.     The State of North Carolina also has created a property and liberty interest in students having a "safe school environment." N.C. Gen. Stat. § 115C-47(61).

62.     To fulfill its legal duty to provide a safe school environment to Ms. Doe, and pursuant to N.C. Gen. Stat. §115C-47(61), Defendant CMS obtained security for MPHS through local law enforcement to obtain an SSRO.

63.     Pursuant to CMS policies, practices, customs, and/or regulations disregarding students leaving school premises during school hours, Defendant Leak acted in bad faith to deny Ms. Doe her rights to both a free public education and a safe school environment when he failed to prevent, intervene, or otherwise rescue her upon observing Q.W. forcibly abduct her from school premises during school hours.

64.     Pursuant to CMS policies, practices, customs, and/or regulations disregarding sexual harassment and violence, Defendant Leak acted in bad faith to deprive Ms. Doe her rights to a free public education and safe school environment when he failed to investigate or resolve Ms. Doe's report that Q.W. abducted from school premises during school hours, through the use of physical force, and raped her in the woods adjacent to MPHS's main campus.

65.     Defendant Leak's deprivation of Ms. Doe's rights to a free public education and safe school environment constitutes deliberate indifference and thus violates her constitutionally protected property and liberty interests under the Fourteenth Amendment to the U.S. Constitution.

66.     Defendant Leak's violation of Ms. Doe's substantive due process rights under the Fourteenth Amendment to the U.S. Constitution directly and proximately caused great injury and damage to these legally protected interests, for which she is entitled to compensatory and exemplary damages.

67.     As a direct and proximate result of Defendant Leak's deliberate indifference to her constitutionally protected rights, Ms. Doe sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

    a.  Past, present, and future physical and psychological pain, suffering, and impairment;

b.  Medical bills, counseling, and other costs and expenses for past, present and future medical and psychological care;

c.  Loss of educational access and opportunity;

d.  Past, present, and future economic losses, including lost wages;

e.  Attorneys' fees and costs; and

f.  Such other and further relief that this Court deems just and proper.

## COUNT III
### (*Violation of Property & Liberty Interest under Fourteenth Amendment, 42 U.S.C. § 1983, against Defendant Perkins*)

68.  Plaintiff incorporates by reference the allegations of facts contained in the previous paragraphs, as if fully set forth herein.

68.  Defendant Perkins is an employee of CMS who at all times relevant to this complaint worked at MPHS and acted under color of law within the scope of his employment.

69.  The State of North Carolina has created a property interest in students having "equal opportunities . . . for all students" to access "free public schools." N.C. Const., Art. IX; N.C. Gen. Stat. § 115C-1.

70.  The State of North Carolina also has created a property and liberty interest in students having a "safe school environment." N.C. Gen. Stat. § 115C-47(61).

71.  Pursuant to CMS policies, practices, customs, and/or regulations disregarding sexual harassment and violence, Defendant Perkins acted in bad faith to deprive Ms. Doe her rights to a free public education and safe school environment when he failed to investigate or resolve Ms. Doe's report that Q.W. abducted from school premises during school hours, through the use of physical force, and raped her in the woods adjacent to MPHS's main campus.

72. Defendant Perkin's deprivation of Ms. Doe's rights to a free public education and safe school environment constitutes deliberate indifference and thus violates her constitutionally protected property and liberty interests under the Fourteenth Amendment to the U.S. Constitution.

73. Defendant Perkin's violation of Ms. Doe's substantive due process rights under the Fourteenth Amendment to the U.S. Constitution directly and proximately caused great injury and damage to these legally protected interests, for which she is entitled to compensatory and exemplary damages.

74. As a direct and proximate result of Defendant Perkin's deliberate indifference to her constitutionally protected rights, Ms. Doe sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

   a. Past, present, and future physical and psychological pain, suffering, and impairment;

   b. Medical bills, counseling, and other costs and expenses for past, present, and future medical and psychological care;

   c. Loss of educational access and opportunity;

   d. Past, present, and future economic losses, including lost wages;

   e. Attorneys' fees and costs; and

   f. Such other and further relief that this Court deems just and proper.

## COUNT IV
### *(Failure to Train under Fourteenth Amendment, 42 U.S.C. § 1983, against Defendant CMS)*

75. Plaintiff incorporates by reference the allegations of facts contained in the previous paragraphs, as if fully set forth herein.

16

76. The State of North Carolina granted local board of education CMS control and supervision over schools within its administrative unit, such as MPHS. *See* N.C. Gen. Stat. §§ 115C-36, 115C-40. CMS is therefore a person acting under the color of law within the meaning of 42 U.S.C. § 1983.

77. Upon information and belief, at all relevant times, Defendant CMS engaged in policy-making to supervise and control all policies, practices, customs, and regulations regarding MPHS and its students. These policies included reporting and responding to crimes and related misconduct, such as abductions and sexual assaults.

78. Upon information and belief, at all relevant times, Defendant CMS engaged in policy-making it also had a duty to train its employees, such as Defendant Perkins, on how to prevent and address crimes and related misconduct, such as abductions and sexual assaults.

79. Upon information and belief, at all relevant times, Defendant CMS engaged in policy-making it also had a duty to train its agents, such as Defendant Leak, on how to prevent and address crimes and related misconduct, such as abductions and sexual assaults.

80. Upon information and belief, at all relevant times, Defendant CMS's failure to train Defendants Perkins and Leak effectively denied Ms. Doe's constitutionally protected property and liberty interests in accessing free public education and a safe learning environment.

81. Defendant CMS's denial of Ms. Doe's right to a free public education and safe school environment violates her substantive due process rights under the Fourteenth Amendment to the U.S. Constitution, and directly and proximately caused great injury and damage to these legally protected interests, for which she is entitled to compensatory and exemplary damages.

82.     As a direct and proximate result of Defendant CMS's deliberate indifference to her constitutionally protected rights, Ms. Doe sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

    a.  Past, present, and future physical and psychological pain, suffering, and impairment;

    b.  Medical bills, counseling, and other costs and expenses for past, present, and future medical and psychological care;

    c.  Loss of educational access and opportunity;

    d.  Past, present, and future economic losses, including lost wages;

    e.  Attorneys' fees and costs; and

    f.  Such other and further relief that this Court deems just and proper.

## COUNT V
### (*Premises Liability against CMS*)

83.     Plaintiff incorporates by reference the allegations of facts contained in the previous paragraphs, as if fully set forth herein.

84.     Defendant CMS holds the real property of MPHS's campus, which includes 64-acres. N.C. Gen. Stat. § 115C-40. Upon information and belief, the real property of MPHS includes a wooded area adjacent to its main campus.

85.     Defendant CMS had a legal duty to provide a "safe school environment" for its students. *See* N.C. Gen. Stat. § 115C-1.

86.     Upon information and belief, Defendant CMS, by and through its agents and officials, were aware that the wooded area adjacent to MPHS's main campus is a dangerous location where sexual assaults have occurred.

87.     To ensure a safe environment, Defendant CMS prohibited MPHS students from entering the wooded area immediately adjacent to the main campus without supervision during the school day, and it has the power and control over its students to enforce such restrictions. Specifically, the 2015-2016 Student Handbook for MPHS stated: "Students may not leave campus without permission from an administrator."

88.     Defendant CMS, by and through its agent, Defendant Leak, breached its duty of care that a reasonable and prudent local board of education would have provided a minor student, like Ms. Doe, during school hours, when it allowed fellow student Q.W. to forcibly abduct her from school premises during school hours without any intervention, investigation, notification to other school personnel or law enforcement, or other efforts to rescue Ms. Doe.

89.     A local board of education of ordinary prudence would have reasonably foreseen that Ms. Doe would likely suffer harm, including sexual assault and related injuries, as being a probable result of an older male student, Q.W., abducting a minor female student, Ms. Doe, from MPHS's main campus into the woods.  This foreseeability is supported by Ms. Doe's repeated efforts to obtain help and express her fear of attack through text messages to her classmates and mother, which resulted in Defendant Leak being contacted to intervene and rescue Ms. Doe without avail.

90.     Through the observations of its agent, Defendant Leak, Defendant CMS knew Q.W. had violent propensities given his forcible abduction of Ms. Doe.  Defendant CMS furthermore received notice of the same through J.D. conveying Ms. Doe's text messages during the abduction and Ms. Doe's father later calling MPHS.  Despite having the ability and opportunity to control Q.W., a student on school property during school hours, during the time of the abduction, Defendant CMS, by and through its agents and officials, breached its duty of care by failing to

take any action to intervene, investigate, notification other school personnel or law enforcement, or otherwise rescue Ms. Doe.

91.    Defendant's refusal to act under the circumstances was willful and wanton, demonstrating conscious and intentional disregard of and indifference to the rights and safety of Ms. Doe, which Defendant knew or should have known was reasonably likely to result in injury.

92.    Defendant CMS's breach of its duty of care owed to Ms. Doe, by and through Officer Leak, is the direct and proximate cause of great injury and damage, for which she is entitled to compensatory and exemplary damages.

93.    As a direct and proximate result of CMS's breach of its duty of care, Ms. Doe sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

   a.    Past, present, and future physical and psychological pain, suffering, and impairment;

   b.    Medical bills, counseling, and other costs and expenses for past, present, and future medical and psychological care;

   c.    Loss of educational access and opportunity;

   d.    Past, present, and future economic losses, including lost wages;

   e.    Punitive damages; and

   f.    Such other and further relief that this Court deems just and proper.

## COUNT VI
### (*Negligence against Defendant Leak*)

94.    Plaintiff incorporates by reference the allegations of facts contained in the previous paragraphs, as if fully set forth herein.

95.     As an agent of CMS, Defendant Leak had legal duties to ensure Ms. Doe the equal opportunity to access free public education at MPHS, including, *inter alia,* pursuant to N.C. Const., Art. IX; N.C. Gen. Stat. § 115C-1.

96.     As an agent of CMS, Defendant Leak had legal duties to provide a "safe school environment" for Ms. Doe at MPHS, including, *inter alia,* pursuant to N.C. Gen. Stat. § 115C-1.

97.     Pursuant to N.C. Gen. Stat. §115C-47(61), Defendant CMS contracted to have Defendant Leak provide security as an SSRO at MPHS and thus ensure equal opportunity for its students to access free public education in a safe school environment.

98.     As an SSRO, Defendant Leak owed a duty of care to Ms. Doe as a student at MPHS entitled to equal opportunity and access to free public education in a safe school environment.

99.     Defendant Leak breached these duties when he failed to prevent, intervene or otherwise address Q.W.'s forcible abducted of Ms. Doe from school premises during school hours.

100.     An SSRO of ordinary prudence would have reasonably foreseen that Ms. Doe would likely suffer harm, including sexual assault and related injuries, as being a probable result of an older male student abducting a minor female student from MPHS's main campus into the woods.  This foreseeability is supported by Ms. Doe's repeated efforts to obtain help and express her fear of attack through text messages to her classmates and mother, which resulted in Defendant Leak being contacted to intervene and rescue Ms. Doe without avail.

101.     Defendant Leak knew Q.W. had violent propensities given his observation of the forcible abduction of Ms. Doe.  Defendant Leak furthermore received notice of the same through J.D. conveying Ms. Doe's text messages during the abduction and Ms. Doe's father later calling MPHS.  Despite having the ability and opportunity to control Q.W., a student on school property during school hours, during the time of the abduction, Defendant Leak breached his duty of care

owed to Ms. Doe by failing to take any action to intervene, investigate, notification other school personnel or law enforcement, or otherwise rescue her.

102.  Defendant Leak's breach of his duty of care is the direct and proximate cause of great injury and damage to Ms. Doe, and further denied her access to free public education in a safe learning environment.

103.  As a direct and proximate result of Defendant Leak's breach of the duty of care owed to Ms. Doe, she sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

    a.  Past, present, and future physical and psychological pain, suffering, and impairment;

    b.  Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

    c.  Loss of educational access and opportunity;

    d.  Past, present, and future economic losses, including lost wages;

    e.  Such other and further relief that this Court deems just and proper.

## COUNT VII
### (*Negligence against Defendant Perkins*)

104.  Plaintiff incorporates by reference the allegations of facts contained in the previous paragraphs, as if fully set forth herein.

105.  As an employee of CMS, Defendant Perkins had legal duties to ensure Ms. Doe the equal opportunity to access free public education at MPHS, including, *inter alia*, pursuant to N.C. Const., Art. IX; N.C. Gen. Stat. § 115C-1.

106.    As an employee of CMS, Defendant Perkins had legal duties to provide a "safe school environment" for Ms. Doe at MPHS, including, *inter alia,* pursuant to N.C. Gen. Stat. § 115C-1.

107.    Defendant CMS employed Defendant Perkins to ensure all students had an equal opportunity to access free public education in a safe school environment at MPHS.

108.    As an employee, Defendant Perkins owed a duty of care to Ms. Doe as a student at MPHS entitled to equal opportunity and access to free public education in a safe school environment.

109.    Defendant Perkins breached his duty when he failed to investigate or resolve Ms. Doe's complaint of rape against Q.W. to instead accuse her of truancy.

110.    A school official of ordinary prudence would have reasonably foreseen that Ms. Doe would suffer a loss of her educational access and a safe learning environment, as well as related injuries, as a result of MPHS failing to address the sexual assault.

111.    Defendant Perkins observed that Ms. Doe was disheveled with semen on her shirt after locating her near the woods with Q.W.  He also learned that Ms. Doe had sent numerous text messages asking for rescue prior to Q.W. sexually attacking her, which she reported to Defendant Leak.  Despite this, Defendant Perkins breached his duty of care by failing to investigate or resolve Ms. Doe's complaint of rape.

112.    Defendant Perkin's breach of his duty of care is the direct and proximate cause of great injury and damage to Ms. Doe, and further denied her access to free public education in a safe learning environment.

113.    As a direct and proximate result of Defendant Perkin's breach of the duty of care owed to Ms. Doe, she sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

    a.  Past, present, and future physical and psychological pain, suffering, and impairment;

    b.  Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

    c.  Impaired educational capacity; and

    d.  Such other and further relief that this Court deems just and proper.

## COUNT VIII
### (*Negligent Infliction of Emotional Distress against Defendant Leak*)

114.    Plaintiff incorporates by reference the allegations of facts contained in the previous paragraphs, as if fully set forth herein.

115.    Defendant Leak acted negligently, recklessly, and in bad faith when he failed to intervene or rescue her from a forcible abduction from school premises during school hours, falsely claimed that Ms. Doe voluntarily skipped class, and made a false report to CMPD that impeded a criminal investigation.

116.    As a result of Defendant Leak's negligence, Ms. Doe suffered a preventable rape, faced accusations of truancy, lost her equal opportunity to access free public education in a safe campus environment, and had her criminal complaint and rape kit neglected by CMPS for 15 days.

117.    As a direct and proximate result of Defendant Leak's negligence, Ms. Doe sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

a. Past, present, and future physical and psychological pain, suffering, and impairment;

b. Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

c. Impaired educational capacity; and

d. Such other and further relief that this Court deems just and proper.

## REQUEST FOR RELIEF

WHEREFORE Plaintiff respectfully requests that this Court grant her a jury trial seeking: (a) compensatory and exemplary damages in an amount that exceeds $75,000.00, to be proven at trial; (b) reasonable attorneys' fees, costs, and expenses; and (c) all other and further relief that justice may require.

## JURY DEMAND

Plaintiff respectfully requests a trial by a jury.

This 1st day of November, 2018.

*/s/ Geraldine Sumter*
Geraldine Sumter
N. C. Bar No. 11107
Ferguson Chambers & Sumter, P.A.
309 East Morehead Street, Suite 110
Charlotte, North Carolina 28202
Telephone: (704) 375-8461
Facsimile: (980) 938-4867
Email: gsumter@fergusonsumter.com

Douglas E. Fierberg, Esq. (*pro hac vice* motion to be filed)
Laura L. Dunn, Esq. (*pro hac vice* motion to be filed)
THE FIERBERG NATIONAL LAW GROUP
161 East Front Street, Suite 200
Traverse City, MI 49684
and

1701 Pennsylvania Avenue, Suite 200
Washington D.C. 20006
Telephone:    (202) 351-0510
Facscimile:    (231) 252-8100
Email: dfierberg@tfnlgroup.com
        ldunn@tfnlgroup.com

*Attorneys for Plaintiff*