IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:18-CV-00586-RJC-DSC

| | |
|---|---|
| JANE DOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **PLAINTIFF'S OPPOSITION TO** |
| | ) **DEFENDANT BOARD'S MOTION** |
| CHARLOTTE-MECKLENBURG | ) *IN LIMINE* |
| BOARD OF EDUCATION, *et al.*, | ) |
| | ) REQUEST FOR ORAL ARGUMENTS |
| Defendants. | ) |
| | ) |

Plaintiff Jane Doe ("Ms. Doe"), by and through counsel, hereby opposes the Motion *in Limine* (MIL) by Defendant Board regarding emotional distress damages (ECF No. 232-1 at 3-5) because (1) such damages are available under Title IX precedent, *see Franklin v. Gwinnett County Public Schools*, 503 U.S. 60 (1992), and (2) (a) *Cummings v. Premier Rehab Keller, PLLC*, 142 S. Ct. 1562 (2022), *reh'g denied*, 142 S. Ct. 2853 (2022) is **not** a Title IX case and did **not** overturn *Franklin* or its underlying common-law tradition, or (b) assuming *arguendo* that *Cummings* does apply to Title IX, it does not prohibit Ms. Doe from seeking parasitic emotional distress damages to her compensatory damages pursuant to applicable contract law principles.

**ARGUMENT**

In *Cannon v. University of Chicago*, the U.S. Supreme Court held that Title IX contained an implied right of action. 441 U.S. 677, 694 (1979); *Cummings*, 142 S.C.t at 159. Counter to the MIL, Ms. Doe has two such claims against Defendant Board—one for an official discriminatory policy and the other for deliberate indifference.[1] (ECF No. 253).

---

[1] Simultaneously with this reply, Ms. Doe also files a separate reply directly challenging Defendant Board's false assertion that her Title IX official policy claim has been dismissed.

1

**I.	Under Longstanding Common Law, as Recognized by *Franklin*, Ms. Doe is Entitled to All Available Damages Under Title IX**

In *Franklin*, the U.S. Supreme Court considered whether Title IX's implied right of action entitled plaintiffs to monetary damages. 503 U.S. at 65-66, 69 (finding the question on available remedies "analytically distant" from the question of whether a statute has an implied right of action) (quoting *Davis v. Passman*, 442 U.S. 228, 239 (1979).) Pursuant to a principle with "deep roots in our jurisprudence," the Court held that all possible monetary damages are available under Title IX. 503 U.S. at 66 (citing *Davis*, 442 U.S. at 246–47).

In discussing the underlying common-law principle, the Court cited *Bell v. Hood*, 327 U.S. 678 (1946), holding that a statutory right of action "presume[s] the availability of ***all appropriate remedies*** unless Congress has ***expressly indicated otherwise***." *Franklin*, 503 U.S. at 66-68 (emphasis added) (declaring this legal foundation "***well settled***.") (Citation omitted); *see also Guardians Assn. v. Civil Serv. Comm'n of NYC*, 463 U.S. 582, 584 (1983) (stating the "usual rule" is that "a federal court may use ***any available remedy to afford full relief***") (citing *Bell*) (emphasis added). It rooted this common-law principle through an originalist approach:

> "From the earliest years of the Republic, the Court has recognized the power of the Judiciary to award appropriate remedies to redress injuries actionable in federal court, although it did not always distinguish clearly between a right to bring suit and a remedy available under such a right."

*Franklin*, 503 U.S. at 66. The Court has upheld this common law tradition in numerous cases. *See, e.g.*, *Dooley v. United States*, 182 U.S. 222, 229 (1901) (stating "liability created by statute without a remedy may be enforced by a common-law action."; *Kendall v. United States ex rel. Stokes*, 37 U.S. 524 (1838) (authorizing a remedy for mail carriers when the statute provided a right but not a remedy, stating "if the remedy cannot be applied by the circuit court of this district, it exists nowhere"); *Texas & Pacific Railroad Company v. Rigsby*, 241 U.S. 33 (1916) (finding an

implied right of action under the Federal Safety Appliance Act of 1893 before then upholding a claim thereunder for monetary damages). In support of this continuing tradition, the Court cited its preeminent case on precedent. *See Franklin* at 66-67 (*quoting Marbury v. Madison*, 5 U.S. 137, 165 (1803) (Marshall, C.J.) ("[O]ur Government 'has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right.'"). As such, the *Franklin* Court reiterated: "A disregard of the command of the statute is a wrongful act, and where it results in damage to one of the class for whose especial benefit the statute was enacted, the right to recover the damages from the party in default is implied, according to a doctrine of the common law . . . ." 503 U.S. at 67 (*quoting Rigsby*, 241 U.S. at 39). It then rejected arguments by defendants that such common law had been undermined. *See id.* at 68 (citing *J.I. Case Co. v. Borak*, 377 U.S. 426 (1964), *Deckert v. Indep. Shares Corp.*, 311 U.S. 282 (1940), and *Bell* to reject defendants' arguments).

The Court also rejected defendants' arguments that monetary damages were not available under the Spending Clause. *See Franklin*, 503 U.S at 75. While the U.S. Supreme Court found that Congress enacted Title IX pursuant to the Spending Clause, *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 287 (1998), it never decided whether this federal civil right had also been enacted pursuant to § 5 of the Fourteenth Amendment of the U.S. Constitution, *Franklin*, 503 U.S at 75, n. 8 ("Because we conclude that a money damages remedy is available under Title IX for an intentional violation *irrespective* of the constitutional source of Congress' power to enact the statute, we need not decide which power Congress utilized in enacting Title IX." ). As such, the Court did not foreclose this source of authority when ruling on available damages. *See id.*; *accord Patterson v. McLean Credit Union*, 491 U.S. 164, 197–98 (1989) (Brennan, J, concurring in part) (stating Congress has authority to pass laws under multiple Constitutional provisions).

Under the Spending Clause, the Court held that recipients would be liable under Title IX for "monetary awards for intentional violations," citing its unanimous holding in *Consolidated Rail Corporation v. Darrone*, 465 U.S. 624 (1984).[2] The Court also distinguished *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 28–29 (1981) as prohibiting damages under the Spending Clause for unintentional violations, not for intentional violations. *See Franklin*, 503 U.S at 74 ("The point of not permitting monetary damages for an unintentional violation is that the receiving entity of federal funds lacks notice that it will be liable for a monetary award."). The Court declared that funding recipients had notice of liability for monetary damages regarding intentional violations of Title IX based on past Title VII precedent.[3] *See id.* at 75 (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 60, 64 (1986) (allowing the plaintiff to seek compensatory damages, punitive damages, and attorneys' fees)). It also noted, "damages were available under Title VI in an action seeking remedies for an intentional violation." *See Franklin*, 503 U.S at 70 (*quoting Guardians*, 463 U.S. at 584 (authorizing "compensatory relief" when "discriminatory intent is shown")).

The Court unequivocally stated that "absent **clear direction to the contrary <u>by Congress</u>**, the federal courts have the power to award **<u>*any*</u>** appropriate relief in a cognizable cause of action brought pursuant to a federal statute." *See Franklin*, 503 U.S at 70-71 (emphasis added) (citing *Bush v. Lucas*, 462 U.S. 367, 378 (1983); *Wyandotte Transp. Co. v. U.S.*, 389 U.S. 191, 200

---

[2] While *Darrone* awarded backpay as equitable relief, the Court said the type of damages is "irrelevant to their underlying objection: that application of the traditional rule in this case will require state entities to pay monetary awards out of their treasuries for intentional violations of federal statutes." *Franklin*, 503 U.S at 75.

[3] In Title IX cases, the Court noted that students do not suffer lost wages nor is equitable relief always possible when the sexual harasser is no longer within the school's control, such that there would be "no remedy at all" if Title IX has no monetary damages. *See Franklin*, 503 U.S at 76.

4

(1967)).  In analyzing whether Congress intended to limit the "traditional presumption in favor of all appropriate relief," the Court considered the state of the law when Title IX passed and found it "follow[ed] a common-law tradition [and] regarded the denial of a remedy as the exception rather than the rule."  *Franklin*, 503 U.S at 72 (citing Court approval of damage remedies in previous implied cause of action cases *J.I. Case Co.*, 377 U.S., at 433; *Wyandotte Transp. Co.*, 389 U.S., at 207; *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229 (1969) and stating that the "same contextual approach used to justify an implied right of action more than amply demonstrates the lack of any legislative intent to abandon the traditional presumption in favor of ***all available remedies***") (emphasis added).  Indeed, the Court has only limited available remedies when an expressly enumerated statute does so.  *See Franklin*, 503 U.S at 69, n. 6 (citing *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985)).

      The Court also referenced (but did not solely rely on) the Rehabilitation Act Amendments of 1986, 42 U.S.C. § 2000d–7, which Congress passed to ensure Title IX abrogated the sovereign immunity held by States under the Eleventh Amendment to the U.S. Constitution.  *See Franklin*, 503 U.S at 64 (citing 100 Stat. 1845 (codified at 42 U.S.C. § 2000d7)); *see Franks v. Kentucky Sch. for the Deaf*, 142 F.3d 360, 363 (6th Cir. 1998) (holding that abrogation occurred under § 5 of the Fourteenth Amendment of the U.S. Constitution even if not expressly invoked) (*quoting Crawford v. Davis*, 109 F.3d 1281, 1283 (8th Cir. 1997)).  While Congress did not specify the remedies available under 42 U.S.C. § 2000d–7, *see id.* at 73 (citing *Milwaukee v. Illinois*, 451 U.S. 304, 329, n. 22 (1981), it states that "remedies (including remedies both at law and in equity) are available . . . ***to the same extent as such remedies are . . . in the suit against any public or private***

*entity other than a State*."[4]  *Franklin*, 503 U.S at 72-73 (citing 42 U.S.C. § 2000d–7(a)(2)) (emphasis added).  The Court thus "presume[d] Congress enacted this statute with the prevailing traditional rule in mind" regarding the broad availability of all damages under Title IX.  *Id.* at 73.

Finally, the Court recognized that the Civil Rights Restoration Act of 1987 was another statutory amendment passed after Title IX that sought to expand its available remedies following the Court's narrowed (and overturned) ruling in *Grove City College v. Bell*, 465 U.S. 555 (1984).  *See Franklin*, 503 U.S at 73 (finding that since "Congress made no effort to restrict the right of action recognized in *Cannon* and ratified in the 1986 Act ***or to alter the traditional presumption in favor of <u>any</u> appropriate relief for violation of a federal right,***" such that the Court "***<u>cannot</u>*** say . . . that Congress has limited the remedies available to a complainant in a suit brought under Title IX") (emphasis added).  As Justice Scalia acknowledged, such legislative actions under 42 U.S.C. § 2000d7 and the Civil Rights Restoration Act of 1987 "must be read, in my view, not only 'as a validation of *Cannon's* holding,' but also as an implicit acknowledgment that damages are available."  *Franklin*, 503 U.S at 78 (Scalia, J., concurring).  As such, this Court should find that Title IX allows emotional distress damages absent clear Congressional action to the contrary.

## II.     *Cummings* Does Not Limit Title IX Damages Available to Ms. Doe

---

[4] Tellingly, when borrowing a statute of limitations from state law, each circuit has analogized Title IX to personal injury claims not contract law claims. *See Curto v. Edmundson*, 392 F.3d 502, 503–04 (2d Cir. 2004) (citing cases), *cert. denied* 545 U.S. 1133 (2005); *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 77–78 (3d Cir. 1989); *Rouse v. Duke Univ.*, 535 Fed.Appx. 289, 294 (4th Cir. 2013) (citing *Wilmink v. Kanawha Cnty. Bd. of Educ.*, 214 Fed.Appx. 294, 295 (4th Cir. 2007)); *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 758–59 (5th Cir. 2015); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 728–29 (6th Cir. 1996); *Doe v. Howe Military Sch.*, 227 F.3d 981, 987–88 (7th Cir. 2000); *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618 (8th Cir. 1996); *Stanley v. Trustees of Cali. State Univ.*, 433 F.3d 1129, 1134 (9th Cir. 2006) (citing cases); *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1212–13 (10th Cir. 2014); *M.H.D. v. Westminster Schs.*, 172 F.3d 797, 802–03 (11th Cir. 1999).

In *Cummings*, a physical therapy center denied the plaintiff an interpreter despite her being deaf and legally blind. 142 S. Ct. at 1568–69 (seeking only emotional damages). In ruling whether the plaintiff was entitled to emotional distress damages for these violations of § 504 and the Affordable Care Act (ACA), the Court reviewed all Spending Clause legislation. *See Cummings*, 142 S. Ct. at 1568-69 (citations omitted) (citing Title VI, Title IX, § 504, and the ACA).

### A. *Cummings* Does Not Limit Emotional Distress Damages under Title IX

First and foremost, *Cummings* is <u>not</u> a Title IX case and did <u>not</u> overrule *Franklin*, which presumed all damages are available under Title IX absent an explicit act of Congress limiting such damages pursuant to longstanding common-law tradition. *See* 503 U.S. at 66-68; *accord Bell v. Hood*, 327 U.S. at 684 ("[I]t is also well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use ***any available remedy to make good the wrong done***."). Additionally, *Cummings* narrowly prohibited emotional damages under § 504 and the ACA. 142 S.Ct. at 1572 (speaking only to "statues we consider here"); *accord Doe v. Purdue Univ.*, No. 4-18CV-89, 2022 U.S. Dist. LEXIS 128601, at *10-11 (N.D. Ind. July 20, 2022); *but see, e.g.*, *Doe ex rel. Doe v. City of Pawtucket*, C.A. No. 17-365, 2022 WL 4551953, at *2 (D.R.I. Sept. 29, 2022); *Doe 1, et al. v. The Curators of the Univ. of Missouri*, Case No. 19-cv-04229, 2022 WL 3366765, *3 (W.D. Mo. August 15, 2022); *Bonnewitz v. Baylor Univ.*, 6:21-cv-00491, 2022 WL 2688399, *3–4 (W.D. Tex. July 12, 2022).

*Cummings* is also limited to legislation enacted solely under the Spending Clause, which is based upon a recipient's consent rather than Congress' involuntarily imposition of congressional policy. *See id.* at 1570 (citations omitted). As such, *Cummings* did **<u>not</u>** address available damages under Title IX pursuant to § 5 of the Fourteenth Amendment of the U.S. Constitution. *See Franklin*, 503 U.S. at 75, n. 8 (declining to decide whether Congress used this source of authority

without foreclosing the inquiry); *Patterson*, 491 U.S. at 197–98 (1989) (recognizing Congressional authority to enact legislation under more than one source of Constitutional authority). Title IX is authorized under the Spending Clause, *see Gebser*, 524 U.S. at 287, as well as the Fourteenth Amendment, *see* Civil Rights Remedies Equalization Act in 1987, 131 CONG. REC. 22,346 (1985) (ensuring Title IX abrogates sovereign immunity and stating it is "clearly authorized" by § 5 and the Spending Clause);[5] S. Rep. No. 388, 99th Cong., 2d Sess. 27 (1986); *see also Franks*, 142 F.3d at 363 (finding that "Section 5 of the Fourteenth Amendment ("Section 5") is the only constitutional provision that the Supreme Court recognizes as granting Congress the power to abrogate the states' immunity.").[6] The *Franklin* Court's reliance on common-law principles of federal courts granting any available relief, as recounted *supra*, further supports this additional basis of constitutional authority for Title IX. *Cf. Crawford*, 109 F.3d at 1283 (finding Congress had the authority to pass Title IX pursuant to § 5 of the Fourteenth Amendment); *Prinsloo v. Ark. State Univ.*, 112 F.3d 514 (8th Cir. 1997) (affirming *Crawford*); *Franks,* 142 F.3d at 363.

---

[5] Defendant Board is a local government agency normally entitled to immunity.

[6] *See* Emily J. Martin, *Title IX and the New Spending Clause*, AM. CONST. SOC., 12 (Dec. 2012) ("[G]ender-based classifications are subject to heightened scrutiny under the Constitution" such that it is "easier for Congress to show a pattern of state constitutional violations justifying legislation under Section 5 when targeting sex discrimination" because "classifications on the basis of sex are presumptively unconstitutional, so evidence of a history of such classifications by states will in general establish a history of constitutional violations. Significant evidence of a pattern of unconstitutional discrimination on the basis of sex in education undergirds Title IX. The Supreme Court itself has taken judicial notice of the 'volumes of history' documenting sex discrimination in education, including unconstitutional discrimination by states. The exclusion of women from public education is part of the long history of states' discrimination on the basis of sex that the Court has acknowledged on numerous occasions. Moreover, when Congress passed Title IX in 1972, it had before it significant evidence of unconstitutional sex discrimination in public schools.") (citing *Nevada Dep't of Human Resources v. Hibbs*, 538 U.S. 721 (2003) & *U.S. v. Virginia*, 518 U.S. 515 (1996)).

Regardless, *Cummings* turns on a recipient's notice regarding potential liability and related damages. *See id.* at 1570-71 ("ask[ing] a simple question: 'Would a prospective funding recipient, at the time it engaged in the process of deciding whether to accept federal dollars, have been aware that it would face such liability?'") (internal quotations and marks omitted) (quoting *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006)). In 1992, the *Franklin* Court gave notice to educational programs and activities receiving federal funding that they would be liable for monetary damages for intentional violations of Title IX. 502 U.S. at 75 (citing *Meritor*). Since that time, courts have recognized the availability of emotional distress damages under Title IX. *See, e.g.*, *Doe v. Fairfax Cty. Sch. Bd.*, 1 F.4th 257, 276-77 (4th Cir. 2021) (*citing Jennings v. Univ. of N. Carolina*, 482 F.3d 686, 699-700 (4th Cir. 2007).) According to the Mecklenburg County website, Charlotte-Mecklenburg Schools (CMS) annually seeks funding to suggest evolving (rather than stagnant) notice of liability and damages under Title IX.[7] To avoid liability and all available damages at common law under Title IX, Defendant Board could have stopped accepting federal funding for CMS, but it did not do so. *Accord Cummings*, 142 S.Ct. at 1573 (holding recipients to their choices to take federal funding) (citation omitted); *Guardians*, 463 U.S. at 596-97 (same). As such, it is liable to Ms. Doe for all available damages pursuant to common law, as held by standing U.S. Supreme Court precedent in *Franklin* and *Bell*.

### B. Under *Cummings,* Ms. Doe May Still Seek Emotional Distress Damages Pursuant to Title IX

In *Cummings*, the U.S. Supreme Court held that available damages under the Spending Clause are based upon those "traditionally available in suits for breach of contract, which include

---

[7] *See* https://www.mecknc.gov/news/Pages/How-the-County-Funds-Education-.aspx; *see also* CMS Budget 2022-2023 (citing ongoing receipt of annual federal funding), https://go.boarddocs.com/nc/cmsnc/Board.nsf/files/CHL2P200B5F7/$file/FY%202023%20Adopted%20Budget%20-%20August%2023%202022%20FINALFINAL.pdf

9

compensatory damages and injunctions." *See id*. at 1571-72 (*quoting Barnes*, 536 U.S. at 187) (excluding all emotional damages as "generally not available for breach of contract"). The Court dismissed the plaintiff's argument that special damages for "emotional disturbance" are recoverable under contract when "particularly likely to result," such as in discrimination cases. *See id*. at 1572 (internal citation omitted). In doing so, the Court denied that "exceptions to the general rule" for contract damages would not be a viable argument. *See id*. at 1573-76 (analogizing to its denial of punitive damages in *Barnes*). However, the Court has previously recognized that a contracting party may be "held liable for ***extraordinary harm due to special circumstances*** . . . [it] knew or had reason to know . . . made ***such extraordinary injury probable***." *Guardians*, 463 U.S. at 597, n. 20 (citation omitted) (emphasis added). Such is the case here.

In distilling the general rules of contract law providing notice to a federal funding receipt of available damages under federal statutes enacted under the Spending Clause, courts have relied upon legal treatises. *See, e.g.*, *Guardians*, 463 U.S. at 597, n. 20 (citation omitted); *see Cummings* at 1572 (internal citation omitted). According to one such treatise, emotional distress damages may be "parasitic elements" to bodily injury damages caused by a breach of contract:

> Wrongful conduct that causes bodily injury is nearly always tortious, whether intentional or merely negligent. In actions for this sort of a wrong, the mental distress that accompanies the bodily injury is considered in determining the damages that are awarded. The conduct that causes bodily injury and mental distress, however, may be wrongful not only because the conduct is a breach of the general law of torts, but also because it is a breach of an express contract made by the defendant. ***When such is the case, there seems to be no good reason for applying a different rule as to the damages to be awarded.***

11 Corbin on Contracts § 59.1 (emphasis added); *id.*, n. 22 (citing *Coffey v. Northwestern Hops. Ass'n*, 183 P. 762 (1919), *reh. den*. 189 P. 407 (1920) ("There is evidence that plaintiff suffered physical pain by reason of the non-performance by defendant of its contract, and where this exists,

a recovery for mental anguish concomitant with the physical pain suffered is a proper element of plaintiff's damages.")). This treatise continued:

> No Doubt, a valid agreement can be made that exceeds the general law of torts and gives a remedy for the causing of a bodily injury for which the general law of torts would give no remedy. In cases where the breach of contract is wanton or reckless, the damages awarded would, by analogy, include mental distress as a parasitic element.

*Id.* ("The exact line between mental distress and physical pain may be an invisible line, because the former, as well as the latter, may well be a disturbance in the bodily nerve cells, but the courts have thus far made a rough practical distinction between them."). It also favorably cites awards for mental distress from defamatory conduct accompanying a breached contract. *See id.*

Unlike the pure emotional distress damages claimed for discrimination in *Cummings*, Ms. Doe alleges that Defendant Board failed to intervene and prevent a peer-perpetrated kidnapping and oral rape, which resulted in foreseeable and preventable physical injuries. (ECF No. 253.) As part of her Title IX official policy claims, Ms. Doe alleges Defendant Board knew about repeated student-on-student sexual assaults in the woods before this incident, such that her injuries were foreseeable. *See Guardians*, 463 U.S. at 597, n. 20 (allowing a contractor to be "held liable for ***extraordinary harm due to special circumstances*** . . . [it] knew or had reason to know . . . made ***such extraordinary injury probable***") (citation omitted) (emphasis added). Rather than preventing such ongoing abuse, Ms. Doe alleges that Defendant Board issued an official discriminatory policy not to protect minor female students in its care who were taken into the woods by male students. Her resulting emotional distress from the preventable oral rape is parasitic to that physical injury and thus properly considered by a jury. *See* 11 Corbin on Contracts § 59.1. Additionally, as part of its intentional discrimination, Defendant Board defamed Ms. Doe in connection with its violation of Title IX by alleging she voluntarily skipped school and engaged in "mutual sexual

activity" despite having evidence she repeatedly verbally declined to engage in such conduct with Q.W. on November 3, 2015. As such, this Court should allow her to seek emotional distress damages where parasitic to her physical injuries and related to Defendant Board's related defamatory conduct.

## CONCLUSION

Based on the foregoing, Ms. Doe asks this Court to deny Defendant Board's MIL limiting "any evidence, testimony, exhibits, and arguments regarding emotional distress damages" under Title IX. (ECF No. 232-1 at 3-5.)

This the 5th day of January 2023.

Respectfully submitted,

_____
Laura L. Dunn (*pro hac vice*)
L.L. DUNN LAW FIRM PLLC
1717 K Street NW, Suite 900
Washington, DC 20008
Telephone: (202) 822-5023
Facsimile: (202) 776-0136
LLD@LLDunnLaw.com

Geraldine Sumter, Esq. (N.C. Bar No. 11107)
FERGUSON CHAMBERS & SUMTER, P.A.
309 East Morehead Street, Suite 110
Charlotte, NC 28202
Telephone: (704) 375-8461
Facsimile: (980) 938-4867
GSumter@fergusonsumter.com

Antonia B. Ianniello (*pro hac vice*)
Linda C. Bailey (*pro hac vice*)
Sabra R. Messer (*pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue NW
Washington, DC 20036
Telephone: (202) 429-3000
Facsimile: (202) 429-3902
aianniello@steptoe.com

12

lbailey@steptoe.com
smesser@steptoe.com

Cara Lawson (*pro hac vice*)
STEPTOE & JOHNSON LLP
227 West Monroe Street, Suite 4700
Chicago, IL  60606
Telephone: (312) 577-1300
Facsimile: (312) 577-1370
clawson@steptoe.com

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was served on all attorneys of record using the Court's CM/ECF system, which will send notification of such filing to any CM/ECF participants.

Terry L. Wallace
Wallace Law Firm, PLLC
6000 Fairview Road, Suite 1200, Charlotte, NC 28210
(704) 626-2903 (T)   (704) 626-3476 (F)
terry@wallacelawnc.com

*Attorney for Charlotte-Mecklenburg School Board of Education*

Stephanie H. Webster
Patrick H. Flanagan
Cranfill Sumner, LLP
P.O. Box 30787, Charlotte, NC, 28230
(704) 332-8300 (T)   (704) 332-9994 (F)
swebster@cshlaw.com
phf@cshlaw.com

Lori R. Keeton
Law Offices of Lori Keeton
6000 Fairview Road, Suite 1200, Charlotte, NC 28210
lkeeton@lorikeetonlaw.com
(704) 575-9204 (T)   (704) 919-5059 (F)

*Attorneys for the City of Charlotte*

This the 5th day of January 2023.	Respectfully submitted,

_____
Laura L. Dunn (*pro hac vice*)
L.L. DUNN LAW FIRM PLLC
1717 K Street NW, Suite 900
Washington, DC 20008
Telephone: (202) 822-5023
Facsimile: (202) 776-0136
LLD@LLDunnLaw.com