UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cv-00586-RJC-DSC

| | |
|---|---|
| JANE DOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **Order** |
| CHARLOTTE MECKLENBURG BOARD OF EDUCATION and CITY OF CHARLOTTE, | ) |
| | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court on the City of Charlotte's Motion to Exclude Expert Testimony (Doc. No. 259) and the Court's prior order on the parties' motions in limine (Doc. No. 282).

## I. BACKGROUND

Jane Doe, a former student at Myers Park High School, alleges that she was kidnapped and sexually assaulted by another student near the school. She claims that the Charlotte Mecklenburg Board of Education ("CMS") violated Title IX by its alleged deliberate indifference to sexual harassment. And she claims that the City of Charlotte negligently hired, trained, retained, and supervised Officer Bradley Leak, the school resource officer assigned to the school at the time. To prove the City's negligence, Doe seeks to admit the testimony of Dr. George Kirkham, a criminologist who taught at Florida State University and worked as a police officer (mostly on a part-time basis) in the latter part of the twentieth century.[1]

---

[1] Dr. Kirkham has not worked as a police officer since 1992. Kirkham Curriculum Vitae 1, Doc. No. 272-1. He stopped teaching as a professor in 1991. Kirkham Dep. 63:2–5, Doc. No. 259-2.

## II. DISCUSSION

Exercising its "gatekeeping function," *United States v. Crisp*, 324 F.3d 261, 265 (4th Cir. 2003), the Court excludes Dr. Kirkham's report and testimony for three reasons. First, Dr. Kirkham is not qualified to offer an opinion related to school resources officers. Second, Dr. Kirkham's testimony is not based on the application of reliable principles to the facts of this case. And third, Dr. Kirkham's testimony will not help the jury understand the evidence or determine a fact in issue. In these ways, Doe has failed to establish the admissibility of Dr. Kirkham's testimony "by a preponderance of proof." *Cooper v. Smith & Newphew*, 259 F.3d 194, 199 (4th Cir. 2001).[2]

To offer an expert opinion on a topic, a witness must be "qualified" by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702; *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) (stating that courts must "make certain" that a proposed expert witness will testify with "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field"). Dr. Kirkham is not qualified to offer an expert opinion on school resource

---

[2] The City has identified eighteen cases in which Dr. Kirkham's opinions have been excluded. *See Pharr v. Wille*, 2016 WL 4082740, at *8 (W.D. Tex. July 29, 2016) ("[I]n cases where Dr. Kirkham's expert testimony faced a direct *Daubert* challenge, this Court's review of case law reveals that federal district courts have summarily rejected his qualifications and opinions."); *see also Marquez v. City of Albuquerque*, 399 F.3d 1216, 1222 (10th Cir. 2005); *United States v. White*, 660 F. App'x 779, 784–85 (11th Cir. 2016); *Est. of Haston v. Warren*, No. 17-14018-CIV-MARRA, slip. op. at 3 (S.D. Fla. March 3, 2018); *Mason v. Faul*, 2018 WL 1371490, at *1 (W.D. La. Feb. 8, 2018); *Est. of Collins v. Wilburn*, 253 F. Supp. 3d 989, 992–93 (E.D. Ky. 2017); *Callaway v. Travis Cnty.*, 2016 WL 8740498, *1 (W.D. Tex. Nov. 30, 2016); *Pellegrino v. Wengert*, 2016 WL 3678600, at *7, *12 (S.D. Fla. July 12, 2016); *Sullivan v. City of Round Rock*, 2016 WL 4257747, *2 (W.D. Tex. Feb. 10, 2016); *Giraldo v. City of Hollywood Fla.*, 142 F. Supp. 3d 1292, 1303–04 (S.D. Fla. 2015); *Campos v. Van Ness*, 52 F. Supp. 3d 240, 244 (D. Mass. 2014); *Heinze v. City of Mesa*, No. 2:10-CV-02385, slip. op. at 39–40 (D. Ariz. Feb. 8, 2013); *Gandy v. Robey*, 2011 WL 11550067, at *1 (E.D. Va. May 16, 2011); *Anderson v. Parish of Ascension*, No. 3:03-cv-00539-JJB-DLD, slip op. at 5–6 (M.D. La. Mar. 15, 2011); *Est. of Morales, Jr. v. City of Jersey City*, 2010 WL 3326805, at *2–3 (D.N.J. Aug. 24, 2010); *Berardi v. Vill. of Sauget*, 2008 WL 5134185, at *3–4 (S.D. Ill. July 21, 2008); *Carr v. Castle*, 2004 WL 5518237, at *1 (W.D. Okla. Nov. 9, 2004); *Harper v. Felcor Lodging Tr., Inc.*, 2017 WL 5192026, at *2 (Fla. Cir. Ct. May 16, 2017).

officers. He has no qualifications relevant to them. He obtained a Doctor of Criminology degree, Kirkham Curriculum Vitae 1, Doc. No. 272-1, but criminology concerns "[t]he study of crime, criminals, and criminal punishment as social phenomena" along with "the study of the causes of crime and the treatment of offenders," *Criminology*, *Black's Law Dictionary* (11th ed. 2019), and there is no indication that Dr. Kirkham ever studied issues related to school resource officers. He worked as a police officer (almost entirely in a part-time capacity), but he served no time as a school resource officer. Kirkham Dep. 63:6–64:3, 65:6–7, Doc. No. 259-2. He trained law enforcement agencies on different issues, but never on issues related to school resource officers. *Id.* 65:10–15. He has written no articles on school resource officers, *see* Kirkham Curriculum Vitae 8–9, and he has never testified about school resource officers, Kirkham Dep. 57:7–19. In short, he has no "knowledge, skill, experience, training, or education" relevant to school resource officers. Fed. R. Evid. 702.

Additionally, Dr. Kirkham's proposed testimony is not "the product of reliable principles and methods" that were "reliably applied" to the facts of this case. Fed. R. Evid. 702(c)–(d); *see Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) ("With respect to reliability, the district court must ensure that the proffered expert opinion is based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods." (internal quotation marks and emphasis omitted)). The bulk of Dr. Kirkham's report fails to expressly identify any principles that were applied by him.[3] Instead, the report often jumps from fact to conclusion, omitting principle and analysis. For example, it

---

[3] The report contains some cursory citations to articles on school resource officers and investigations, and it sometimes describes certain principles. But it consistently fails to follow up those descriptions with an application of the principles "to the facts of the case." Fed. R. Evid. 702(d). And nowhere does the report establish any principle's reliability.

describes Officer Leak's "attempt to dissuade Jane Doe from leaving Campus" when he saw her and Q.W. (the alleged offender) on the edge of the woods: Officer Leak, who was directing traffic near the school, yelled out to Doe from the roadway, promising to call her mother once he returned to his office. Kirkham Report 5, Doc. No. 259-1. The report then explains that Officer Leak saw the two turn around and walk back to school, though Q.W. allegedly grabbed Doe and forced her into the woods before they got there. *Id.* Without citing any principle or conducting any analysis, the report jumps from these facts to a pronouncement of Dr. Kirkham's conclusion—that Officer Leak failed to respond "appropriately." *Id.* While the report later describes two additional actions that Officer Leak could have taken, *see id.* at 6 (asserting that he should have quit directing traffic or asked someone else to escort the students to class), it does not identify—much less demonstrate the "reliab[ility]" of—any "principles" relating to the practices of school resource officers that required Officer Leak to take those actions. Fed. R. Evid. 702(c)–(d).

Dr. Kirkham's testimony also would not "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). His proffered opinion is that "the incident giving rise to this litigation . . . w[as] avoidable and thus significantly and proximately caused by serious violations of well-established standards and procedures of the law enforcement profession by School Resource Officer Bradley Leak." Kirkham Report 2. That opinion would not help the jury determine a "fact." Fed. R. Evid. 702(a); *see United States v. McIver*, 470 F.3d 550, 561 (4th Cir. 2006) ("[Q]uestions of fact that are committed to resolution by the jury are the proper subject of opinion testimony."). Rather, it would provide a legal conclusion: that Officer Leak's conduct fell below the applicable standard of care and caused Doe's alleged sexual assault. *See Foster v. Nash-Rocky Mount Cnty. Bd. of Educ.*, 665 S.E.2d 745, 750 (N.C. Ct. App. 2008) (explaining that, to prove a claim for negligent hiring, supervision, and retention, the plaintiff must show that "the

injury complained of resulted from the incompetency proved"). Such a conclusion would not help the jury. *See United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011) ("[I]t does not help the jury for an expert to give testimony that 'states a legal standard or draws a legal conclusion by applying law to the facts' because it 'supplies the jury with no information other than the witness's view of how the verdict should read.'" (first quoting *McIver*, 470 F.3d at 562; then quoting *Weinstein's Federal Evidence* § 704.04[2][a] (2d ed. 2003))).

Nor would Dr. Kirkham's testimony help the jury "understand the evidence." Fed. R. Evid. 702(a). Often, his report merely describes the evidence and then states commonsensical inferences that the jury could derive on its own. *See, e.g.*, Kirkham Report 4–5 ("The dangers of the woods adjacent to [the school] were . . . well-known to CMS officials . . . . Thus, [Officer] Leak was cognizant of the potential risk of harm to . . . students entering the woods when he observed Q.W. and Jane Doe walking near the edge of campus by the woods."). Such descriptions and inferences concern "matter[s] which obviously [are] within the common knowledge of jurors," so they are not helpful. *Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1055 (4th Cir. 1986); *see also* 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 702.03[2] (Mark S. Brodin, ed., Matthew Bender 2d ed. 2022) ("Expert testimony is generally not permitted concerning factual issues that are within the knowledge and experience of ordinary lay people . . . ."); 29 Victor J. Gold, *Federal Practice and Procedure (Wright & Miller)* § 6265.2 (2d ed. Apr. 2022 update) ("[E]xpert testimony does not help where the jury has no need for an opinion because the jury can easily reach reliable conclusions based on common sense, common experience, the jury's own perceptions, or simple logic.").

At the same time, this testimony, delivered in expert-sounding phraseology, could appear to bolster Doe's case with an undeserved scientific imprimatur. Thus, the testimony's minimal

probative value is substantially outweighed by the danger that the jury will be "misle[d]" and that the City will suffer "unfair prejudice." Fed. R. Evid. 403. So it is also inadmissible under Rule 403. *See United States v. Dorsey*, 45 F.3d 809, 813 (4th Cir. 1995) (explaining that, when deciding "whether the evidence will be helpful to the trier of fact," a district court "must be mindful of other evidentiary rules, such as [Rule] 403"); *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) ("[E]xpert witnesses have the potential to be both powerful and quite misleading. And, given the potential persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to enlighten should be excluded." (internal quotation marks and citation omitted)).

### III. CONCLUSION

**IT IS, THEREFORE, ORDERED** that the City of Charlotte's Motion to Exclude Expert Testimony (Doc. No. 259) is **GRANTED**.

Signed: January 17, 2023

Robert J. Conrad, Jr.
United States District Judge