UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cv-00586-RJC-DSC

| | |
|---|---|
| JANE DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **Order** |
| CHARLOTTE MECKLENBURG BOARD OF ) | |
| EDUCATION, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on the City of Charlotte's and the Charlotte Mecklenburg Board of Education's oral objections, argued at trial, to part of the proposed testimony of Jane Doe's expert witness, Dr. Sharon Cooper. This written order follows the Court's oral pronouncement at trial.

I. BACKGROUND

Jane Doe, a former student at Myers Park High School, alleges that she was kidnapped and sexually assaulted by another student near the school. She claims that the Charlotte Mecklenburg Board of Education ("CMS") violated Title IX by its alleged deliberate indifference to sexual harassment. And she claims that the City of Charlotte negligently hired, trained, retained, and supervised Officer Bradley Leak, the school resource officer assigned to the school at the time. At trial, Doe sought to admit the testimony of Dr. Sharon Cooper, a "developmental and forensic pediatrician." Trial Tr. 468:9–10 (Jan. 18, 2023), Doc. No. 308. The City and CMS objected to part of Dr. Cooper's proposed testimony, arguing that some of the testimony would go "outside

the scope" of her expertise. *Id.* at 271:3–4.[1] The Court sustained those objections, excluding some of Dr. Cooper's testimony. This order elaborates on the reasons for that ruling.

## II. DISCUSSION

Exercising its "gatekeeping function," *United States v. Crisp*, 324 F.3d 261, 265 (4th Cir. 2003), the Court excluded Dr. Cooper's proposed testimony on victimology, Doe's behavior, and the school and law-enforcement standards that govern reports of student-on-student sexual assault and kidnapping, Trial Tr. 419:13–16; *see also id.* at 416:9–417:4, but it admitted the testimony about Doe's medical-treatment damages and her ongoing need for treatment, *id.* at 421:1–3; *see also id.* at 417:5–18. It did so for three reasons. First, while Dr. Cooper is highly qualified in several areas related to the medical field, she is not qualified to offer an expert opinion on the school and law-enforcement standards at issue in this case. Second, the challenged portions of Dr. Cooper's proposed testimony are not based on the application of reliable principles to the facts of this case: they express a misunderstanding of Dr. Cooper's role; they include inflammatory and speculative remarks; and they lack principled analysis. Third, Dr. Cooper's testimony about victimology, and her corresponding commentary on Doe's behavior, would not have helped the jury understand the evidence or determine a fact in issue. In these ways, Doe has failed to establish the admissibility of the challenged portions of Dr. Cooper's testimony "by a preponderance of proof." *Cooper v. Smith & Newphew*, 259 F.3d 194, 199 (4th Cir. 2001).

---

[1] In its Motion in Limine, CMS asked the Court to exclude any testimony by Dr. Cooper that went "beyond her expertise as a developmental and forensic pediatrician." CMS's Br. Supp. Mot. in Limine 10, Doc. No. 232-1. The Court denied that motion without prejudice, stating that, at trial, the Court would "consider objections to specific testimony." Order on Mots. in Limine 5, Doc. No. 282. At trial, CMS and the City raised specific objections to some of Dr. Cooper's proposed testimony. Trial Tr. 270:23–271:18, 412:23–415:9 (Jan. 18, 2023), Doc. No. 308. The Court sustained those objections and limited Dr. Cooper's testimony accordingly. *Id.* at 417:25–421:20.

To offer an expert opinion on a topic, a witness must be "qualified as an expert" by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702; *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) (stating that courts must "make certain" that a proposed expert witness will testify with "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field"); *see also In re Pella Corp.*, 214 F. Supp. 3d 478, 496 (D.S.C. 2016) ("[A]n expert witness may not offer an opinion where the subject matter goes beyond the witness's area of expertise." (quoting *Ruark v. BMW of N. Am., LLC*, 2014 WL 351640, at *3 (D. Md. Jan. 30, 2014))). Dr. Cooper is not qualified to offer an expert opinion on the standards that schools and law-enforcement agencies apply when responding to reports of student-on-student sexual assault or kidnapping.

Dr. Cooper's expertise is in medicine, not police or school standards. She is a "developmental and forensic pediatrician." Trial Tr. 468:9–10 (Dr. Cooper's testimony); *see also* Cooper Report 1, Doc. No. 283-1. During her time in the Army, she "served as the child abuse physician at all [her] assignments" except for a two-year fellowship in developmental pediatrics. Cooper Report 1. During this time, she was "responsible for diagnosing and treating child maltreatment cases of all types." *Id.* She instructed "military and civilian health care providers" on "all forms of child maltreatment," "intimate partner violence," and "the medical aspects of homicide cases." *Id.* After retiring from the Army, she became an adjunct professor of pediatrics at the University of North Carolina at Chapel Hill School of Medicine. *Id.* She continues to work at several health care centers, seeing patients and teaching on medical subjects related to sexual assault. *Id.* at 1–2. In short, Dr. Cooper's practice is focused on medical issues, not on the standards that govern schools or law-enforcement agencies. *See id.* at 3 ("As a Forensic Pediatrician, my scope of practice includes forensic medical evaluations and recommendations for the treatment of

minors and young adults who have experienced all forms of sexual abuse and exploitation . . . ."). Accordingly, her "expert testimony" has consisted of "opinions on restitution for medical/psychological needs of the victims in several criminal cases in state courts, federal courts, and in civil cases for many crimes against children." Cooper Report 2; *see also id.* at 3 ("I provide medical analyses of ICT [internet and communication technology] victims of abusive images and sex trafficking for the purpose of restitution in federal courts and for civil litigation in private cases involving school systems and health care facilities.").

Like her practice, Dr. Cooper's writings focus on medical topics, not on school or police standards. She has written extensively on the "[m]edical [a]spects" of child sexual abuse, offering a "[m]edical [a]nalysis" and "[m]edical [o]verview" of the issue. Cooper Curriculum Vitae 3–14, 17, 19, 21–26, 29, 31–32, 38–43, 55, Doc. No. 283-2. She has also thoroughly explored the "[r]ole" of pediatricians and other medical professionals in child-abuse cases. *Id.* at 8, 10–14, 16–18, 20–22, 26–28, 30, 32, 35, 37–39, 41, 50–52. And she has explained the harms caused by child pornography and sex trafficking. *See, e.g.*, *id.* at 44–54.

Doe fails to identify specific qualifications possessed by Dr. Cooper that (i) relate to the school and law-enforcement standards that govern reports of student-on-student sexual assault or kidnapping and (ii) are sufficient to qualify Dr. Cooper "as an expert" on those standards. Fed. R. Evid. 702. Virtually all the identified cases that Dr. Cooper has been involved in concern sex trafficking, child pornography, or criminal acts of abuse. *See* Cooper Case List 1–6, Doc. No. 283-3. And in all those cases, she served as an "[e]xpert *[m]edical* [w]itness." *Id.* at 2 (emphasis added). Thus, as to the school and law-enforcement standards that are relevant in this case, Doe has not established Dr. Cooper's expertise "by a preponderance of proof." *Cooper*, 259 F.3d at 199.

Second, the challenged portions of Dr. Cooper's proposed testimony are not "the product[s] of reliable principles and methods" that were "reliably applied" to the facts of this case. Fed. R. Evid. 702(c)–(d); *see Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) ("With respect to reliability, the district court must ensure that the proffered expert opinion is based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods." (internal quotation marks and emphasis omitted)). With regard to assessing Doe's "victimization," Dr. Cooper misstates her role, saying: "My role is focused on the victimization from abusive videos in this case and the associated long-term victim impact." Cooper Report 3. As explained above, Dr. Cooper's work often focuses on videos that depict abuse, such as child pornography. But there are no such videos in this case. Dr. Cooper's misunderstanding of the facts undermines the reliability of her proposed testimony on "victimology." Trial Tr. 416:23 (Jan. 18, 2023), Doc. No. 308.

Additionally, when it concerns school officials or police officers, Dr. Cooper's proposed testimony is unnecessarily inflammatory. *See, e.g.*, Cooper Report 7 (asserting that Doe was "irreparably damaged" by an "institutional betrayal" that "left her abandoned in the woods to be sexually assaulted"); *id.* at 8 (stating that a report submitted by Leak "result[ed] in a travesty of justice"); *id.* at 9 (alleging "malfeasance" by Leak and Anthony Perkins, the assistant principal at the time). The testimony is also speculative: Dr. Cooper imputes malicious intentions to school officials and police officers. *See, e.g.*, *id.* at 4 (stating that it "appeared" that an officer's statements were made "to coerce [Doe] to recant"); *id.* at 10 ("SSRO Leak and AP Perkins took proactive efforts to obstruct any subsequent investigation, to interfere with [Doe's] efforts to seek justice . . . ."). Such testimony is based on "belief or speculation," not on "scientific or other valid methods." *Nease*, 848 F.3d at 229.

Furthermore, Dr. Cooper's proposed testimony on the school and police fails to engage in principled analysis. Dr. Cooper draws several conclusions about the officials' and officers' performance, but she fails to identify any reliable principles that were applied to reach those conclusions. For example, she concludes that the "law enforcement interview of Ms. Doe was poorly executed." Cooper Report 7. She reaches that conclusion without identifying any "principles" under which the interview should be judged, without demonstrating that any principles applied were "reliable," and without applying those principles "to the facts of the case." Fed. R. Evid. 702. Indeed, though Dr. Cooper alleges "violations of standard operating procedures regarding child abduction and sexual assault," she never actually identifies the "standard operating procedures" that she is referring to. Cooper Report 10. Similarly, she asserts that "[t]he rules were breached, ominously so, by officials from CMS and CMPD." *Id.* But, again, she fails to say what "[t]he rules" were. *Id.*[2]

Third and finally, Dr. Cooper's proposed use of victimology to explain Doe's behavior would not have "help[ed]" the jury in this case "to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Doe wanted Dr. Cooper to testify about whether "Doe simply walk[ed] off with" Q.W., the student who allegedly committed the sexual assault. Trial Tr. 416:25 (Jan. 18, 2023), Doc. No. 308. But the jury could assess Doe's actions for itself. There is nothing scientifically complicated about the facts of this case, nor is there any indication that Q.W. used any subtle or sophisticated methods of manipulation. Thus, Doe's and Q.W.'s actions were "matter[s] which obviously [are] within the common knowledge of jurors," so expert testimony

---

[2] Dr. Cooper's report often fails to substantiate its assertions. *See, e.g.*, Cooper Report 10, Doc. No. 283-1 (asserting that something is "well described in social science literature" without providing any citations); *id.* (purporting to explain what "[s]cience has revealed" without providing any citations); *id.* at 11 (using the phrase "according to research" without citing any research).

about them would not have been helpful. *Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1055 (4th Cir. 1986); *see also* 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 702.03[2] (Mark S. Brodin, ed., Matthew Bender 2d ed. 2022) ("Expert testimony is generally not permitted concerning factual issues that are within the knowledge and experience of ordinary lay people . . . ."); 29 Victor J. Gold, *Federal Practice and Procedure (Wright & Miller)* § 6265.2 (2d ed. Apr. 2022 update) ("[E]xpert testimony does not help where the jury has no need for an opinion because the jury can easily reach reliable conclusions based on common sense, common experience, the jury's own perceptions, or simple logic.").

### III. CONCLUSION

For these reasons, the Court sustained the City's and CMS's objections to part of Dr. Cooper's proposed testimony.

Signed: February 17, 2023

Robert J. Conrad, Jr.
United States District Judge